IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

NANCY G. TARRANT, As          §
Administrator of THE          §
ESTATE OF MARK J. GUIDRY,     §
                              §
              Plaintiff,      §
                              §    CIVIL ACTION NO. H-11-4105
v.                            §
                              §
OFFSHORE OIL SERVICES, INC.,  §
                              §
              Defendant.      §

## MEMORANDUM OPINION AND ORDER

This action was filed on November 23, 2011, by plaintiff, Mark J. Guidry, against defendant, Offshore Oil Services, Inc. ("OOS"), for failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. On October 12, 2012, Plaintiff's Unopposed Motion to Substitute the Administrator of Mark Guidry's Estate as Plaintiff ("Motion to Substitute Party") (Docket Entry No. 18) filed by Nancy G. Tarrant, as administrator, was granted and Tarrant was substituted for Guidry as the plaintiff (Docket Entry No. 19). Pending before the court are Defendant Offshore Oil Services, Inc.'s Motion for Summary Judgment (Docket Entry No. 11) and Plaintiff's Objections and Motion to Strike the Affidavit of Michael Gay (Docket Entry No. 24). For the reasons stated below defendant's motion for

summary judgment will be granted, and plaintiff's objections and motion to strike will be denied as moot.

## I.  Background

Defendant OOS operates seven boats that provide services to drilling rigs and production platforms in the Gulf of Mexico by transporting men, equipment, and supplies to and from offshore locations.  Each boat typically has a four-man crew comprised of two licensed captains and two unlicensed employees whom defendant argues are seamen.  Crew members typically work 14 days on and 7 days off and are typically paid a per diem rate.[1]  According to OOS's Executive Vice-President, Michael Gay, the original plaintiff, Mark Guidry, was classified as a Seaman 1, a position that required Guidry to perform the following duties:

- Exercise direct responsibility for the operation of the vessel's engines and machinery;

- Maintain the vessel's engine room in accordance with maintenance schedules;

- Assist in the safe loading and unloading of cargo and ensure safe rigging practices;

- Check engine and clutch oil after each run;

- Sound fuel tanks after each run;

- Swap out generators every 24 hours;

---

[1]Affidavit of Michael Gay ("Gay Affidavit") attached to Defendant Offshore Services, Inc.'s Motion for Summary Judgment ("Defendant's Motion for Summary Judgment"), Docket Entry No. 11, p. 1 ¶ 3.

- Pump out bilges;

- Keep engine room and deck free of excess oil;

- Complete the engine room log;

- Oversee the process of transferring fuel and refueling;

- Check all fluid levels;

- Work with the captain to ensure ongoing vessel and engine maintenance;

- Requisition parts and supplies;

- Assist in vessel operation;

- Prepare meals for crew as requested by the captain;

- Vacuuming, sweeping and mopping decks;

- Cleaning toilets, sinks, and showers; and

- Complying with other orders of the captain.[2]

OOS maintains that "[a]ll of Mr. Guidry's duties were performed aboard the vessel and aided in the navigation of the vessel. None of Mr. Guidry's duties were performed ashore or on any offshore platforms or rigs."[3]

Guidry brought this suit under the FLSA alleging that he had been misclassified by defendant as a "seaman" and therefore deprived of overtime compensation under that statute. Plaintiff seeks actual damages for unpaid overtime wages. Plaintiff does not contest that many of Guidry's job duties as a "Seaman 1" are

---

[2]Id. at 1-2 ¶ 5.

[3]Id. at 2 ¶ 6.

seamen's work for FLSA purposes.   Instead, the parties' dispute focuses on duties that required Guidry (1) to load and unload cargo, (2) to help care for passengers by cooking their meals, cleaning their rooms, and washing their linens, and (3) to work in a warehouse located onshore during the weeks that he was not working on board one of defendant's boats.   Plaintiff argues that these duties are not "seaman" duties under the FLSA, and that because these duties comprised a substantial amount of Guidry's work time, Guidry fell outside of the FLSA's "seaman" exemption and was entitled to overtime compensation.   Defendant OOS has moved for summary judgment, arguing that "the nature of the work actually performed by Mr. Guidry shows that there is no dispute that he was employed as a seaman at all relevant times as that term is used in the FLSA."[4]

## II.   **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.   Fed. R. Civ. P. 56(c).   Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986).   The Supreme Court has interpreted the plain language of Rule 56(c) to

---

[4]Defendant's Motion for Summary Judgment, Docket Entry No. 11, p. 3 ¶ 7.

mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc), (quoting Celotex, 106 S.Ct. at 2553-2554). If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S.Ct. at 2553-2554). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

### III.   Defendant's Motion for Summary Judgment

Defendant moves for summary judgment arguing that, as a matter of law, Guidry was properly classified as a "seaman" and therefore

exempt from the FLSA's requirements for overtime compensation. Asserting that Guidry's primary duty was to serve passengers, not crew members, and that Guidry also performed a significant amount of work for OOS on shore, plaintiff argues that genuine issues of material fact preclude the court from granting summary judgment.

## A.    Applicable Law

The FLSA's overtime provisions generally provide that an employer may not employ an employee for a workweek longer than forty hours, unless the employee is compensated for any additional hours at one and one-half times the employee's regular pay rate. 29 U.S.C. § 207(a)(1).  The overtime requirements do not, however, apply to "any employee employed as a seaman."   29 U.S.C. § 213(b)(6).   "[T]he term 'seaman' does not have a fixed and precise meaning . . . its meaning is governed by the context in which it is used and the purpose of the statute in which it is found."  29 C.F.R. § 783.29(c).  See also Martin v. Bedell, 955 F.2d 1029, 1035 n.11 (5th Cir.), cert. denied, 113 S.Ct. 323 (1992) (explaining that "a seaman under the Jones Act is not a seaman under the FLSA").  The FLSA's remedial goals have caused courts, including the Fifth Circuit, "to read narrowly its exemptions, including the definition of 'seaman.'"   Id. at 1035.  See also Mitchell v. Kentucky Finance Co., 79 S.Ct. 756, 759 (1959) ("It is well settled that exemptions from the Fair Labor Standards Act are to be narrowly construed."); 29 C.F.R. § 783.29(c) ("In construing

the Fair Labor Standards Act, as a remedial statute passed for the benefit of all workers engaged in commerce, unless exempted, the courts concluded that giving a liberal interpretation of the meaning of the term 'seaman' as used in an exemptive provision of the Act would frustrate rather than accomplish the legislative purpose.").

While the FLSA does not define the term "seaman," in interpreting 29 U.S.C. § 213(b)(6), courts, including the Fifth Circuit, have relied on principles of administrative deference and adopted the definition promulgated by the Department of Labor at 29 C.F.R. § 783.31:

> [A]n employee will ordinarily be regarded as "employed as a seaman" if he performs, as master or subject to the authority, direction, and control of the master aboard a vessel, service which is rendered primarily as an aid in the operation of such vessel as a means of transportation, provided he performs no substantial amount of work of a different character.  This is true with respect to vessels navigating inland waters as well as ocean-going and coastal vessels.

See Icicle Seafoods, Inc. v. Worthington, 106 S.Ct. 1527, 1530 (1986) ("The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law which both parties concede is governed by the pertinent regulations promulgated by the Wage and Hour Administrator. See 29 CFR pt. 783 (1985)."); Owens v. SeaRiver Maritime, Inc., 272 F.3d 698, 704 (5th Cir. 2001), cert. denied, 122 S.Ct. 1953 (2002) (citing 29 C.F.R. § 783.31 and describing seaman's work as work "rendered primarily as an aid in the operation of [a] vessel as a means of

-7-

transportation"). Whether an employee is "employed as a seaman" depends on

> the character of the work he actually performs and not on what it is called or the place where it is performed. Merely because one works aboard a vessel . . . or may be articled as a seaman . . . or performs some maritime duties . . . one is not employed as a seaman within the meaning of the Act unless one's services are rendered primarily as an aid in the operation of the vessel as a means of transportation, as for example services performed substantially as an aid to the vessel in navigation. For this reason it would appear that employees making repairs to vessels between navigation seasons would not be "employed as" seamen during such a period. . . For the same and other reasons, stevedores and longshoremen are not employed as seamen. . . Stevedores or roust-abouts traveling aboard a vessel from port to port whose principal duties require them to load and unload the vessel in port would not be employed as seamen even though during the voyage they may perform from time to time certain services of the same type as those rendered by other employees who would be regarded as seamen under the Act.

29 C.F.R. § 783.33 (citations omitted). "The term 'seamen' includes members of the crew such as sailors, engineers, radio operators, firemen, pursers, surgeons, cooks, and stewards if, as is the usual case, their service is of the type described in § 783.31," 29 C.F.R. § 783.32, but the term "seaman" has been held not to include "[w]orkers who are primarily concerned with loading and unloading cargo." Owens, 272 F.3d at 704 (citing 29 C.F.R. § 783.36). "Whether an employee is on board a vessel primarily to perform maritime services as a seaman or loading and unloading services typical of such shore-base[d] personnel as longshoremen is a question of fact and can be determined only after reviewing all the facts in the particular case." 29 C.F.R. § 783.36.

-8-

An employee will be regarded as "employed as a seaman" if his work as a whole meets the test stated in § 783.31, even though during the workweek he performs some work of a nature other than that which characterizes the service of a seaman, as long as such nonseaman's work is not substantial in amount. Martin, 955 F.2d at 1035-36 ("When a worker performs both seaman's work and nonseaman's work, he is a seaman unless his nonseaman's work is substantial in amount."). Non-seaman's work is "substantial" if it "occupies more than 20 percent of the time worked by the employee during the work week." Id. at 1036 (quoting 29 C.F.R. § 783.37). Although the Fifth Circuit applies the 20% rule promulgated by the Department of Labor, the Fifth Circuit has explained that the 20% rule is not to be applied in

> a strict, mechanical fashion. An employee is "employed as a seaman" under the FLSA unless the employee performs a substantial amount of nonseaman's work. But, the amount of nonseaman's work an employee performs can vary from week to week. For instance, a member of a vessel's crew may aid with the loading and unloading of cargo when the vessel is in port. In a given week, that crew member may, *without* any change in basic assignment or position, spend more than 20 percent of his time performing nonseaman's work. This should not mean that the crew member loses his seaman status for that week, and in such a case the crew member should remain a seaman unless, as a *general* matter, a substantial portion of his time was taken up by nonseaman's work. To hold otherwise would produce an absurd result-crew members on vessels who spent the vast majority of their time at sea would, *without* any change in their basic assignment or position, lose their seaman status for the few weeks a year their vessels were in port. . . Rather than focus on a week by week analysis, the determining factors should be the general nature of the work the employee most often performs in his particular position and the primary purpose of the position the employee occupies.

Owens, 272 F.3d at 702 n.5 (citing Chandris, Inc. v. Latsis, 115
S.Ct. 2172, 2191-92 (1995)).  OSS bears the burden to show that
Guidry was a seaman and thus exempt from the FLSA's overtime
provisions.  Martin, 955 F.2d at 1035.

## B.   Application of the Law to the Facts

OOS contends that because Guidry spent a substantial amount,
if not all, of his working time in aid of the operation of the
vessel as a means of transportation, he was a seaman exempt from
the FLSA overtime provisions.  In support of these contentions, OOS
submits the affidavit of Michael Gay, Executive Vice-President of
OOS, and the business records of OOS attached thereto that include
engineer's logs from the *Evelyn M*, the boat on which Guidry worked
throughout the period at issue.  OOS argues that the Gay Affidavit
and the engine logs attached thereto show that "[a]ll of Guidry's
duties were performed aboard the vessel,"[5] and "[a] large part of
what Mr. Guidry actually did each day is known with certainty
because as the vessel's engineer he kept and signed daily
engineer's logs."[6]  OOS argues that the Gay Affidavit also shows
that

> [c]rew members, including Mr. Guidry, live aboard the
> vessel for the entirety of their 14 day tour.  Meals for
> the crew are prepared by the crew.  No specific crew

---

[5]Defendant's Motion for Summary Judgment, Docket Entry No. 11,
p. 3 ¶ 10 (citing Gay Affidavit ¶¶ 5-6).

[6]Id. at 4 ¶ 11 (citing Gay Affidavit ¶ 7).

-10-

member is assigned cooking duties; rather, cooking duties are shared by all crew members and are generally allocated among themselves informally based in part on individual talents and preferences.[7]

Acknowledging that Guidry worked on the *Evelyn M,* a vessel that transported pipeline maintenance workers for Williams Co. between production platforms, OOS contends that "[i]f three or more Williams employees were aboard the vessel, a cook was hired as an additional crew member to prepare meals for both the Williams employees and the vessel crew . . . [and that n]either Mr. Guidry nor any other crew member [was] assigned the duty of cleaning the quarters of the Williams employees."[8]  OOS argues that

> [t]o the extent that Mr. Guidry performed cooking and cleaning for third parties aboard the vessel, this work was a very small part of his duties. Moreover, the work would necessarily have been done whether or not these third parties were aboard because the work had to be done for the vessel crew. . . Cooking a meal for the vessel crew is the work of a seaman even if another person joins them at the table.[9]

Asserting that Guidry's primary duty was to serve passengers, not crew members, plaintiff argues that OOS's motion for summary judgment should be denied because service performed for passengers is not exempt seaman's work.[10]  In support of this argument plaintiff cites Guidry's sworn declaration, and excerpts from the

---

[7]Id. ¶ 12 (citing Gay Affidavit ¶ 9).

[8]Id. at 5 ¶ 13 (citing Gay Affidavit ¶¶ 10-11).

[9]Id. at 5 ¶ 14 (citing Gay Affidavit ¶ 12).

[10]Plaintiff's Response to the Defendant's Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 23, p. 2.

deposition testimony of Michael Gay, Alvin Gatshall, the captain under whom Guidry served, and Armand Kiechler, one of the *Evelyn M*'s engineers.  Plaintiff contends that this evidence shows that Guidry regularly performed a variety of nonseaman's duties such as loading and unloading the boat, cooking, cleaning, and laundering for passengers, shopping for groceries used to feed passengers, transporting crew members to and from the boat, and working in OOS's on-shore office and warehouse.

Guidry stated in his sworn declaration that

2.   I worked for Offshore Oil Services, Inc. ("OOS") from June 30, 2008 until September 13, 2011.  OOS had a contract with an oil drilling firm to provide transportation and some hospitality services on the boat.  OOS transported oil drilling personnel, equipment, and luggage, by boat to the site of oil drilling platforms in the Gulf of Mexico.  The oil drilling personnel and equipment that OOS transported belonged to a separate company that was not part of OOS.  Although I served briefly on the boats named the *Hayden* and the *Raymond M*, I estimate that ninety-nine percent (99%) of my time for OOS was spent on the boat named the *Evelyn M*.

3.   Although OOS gave me the title of Engineer, my duties for OOS involved a variety of tasks such as:

  a.   Loading and unloading the boat;

  b.   Cooking for guest passengers and crew members;

  c.   Cleaning the guest cabins, showers, etc., which we provided to the oil drilling employees that we transported;

  d.   Laundering towels, bedsheets, etc. which we provided to our customer's employees when we transported them;

  e.   Shopping for groceries for the boat, for the benefit of both passengers and crew members;

      f.    Working at the office of OOS and helping to relocate a warehouse belonging to OOS;

      g.    Transporting crew members to and from the boat;

      h.    Monitoring the performance of the engine and filling out reports on the engine's maintenance;

4.   Shopping for groceries, working at the office, helping to relocate a warehouse, and transporting crew members to and from the boat were all duties that I performed while not on board the boat.

5.   The engine maintenance logs are not even close to a complete list of my job duties, and what these logs describe does not account for the majority of my work time for OOS.  I worked on the boat for two-week stretches, usually followed by a week of working for OOS on shore.  This means that I spent nearly every third week working for OOS off the boat.  OOS paid me for my on-shore time using the same daily rate that OOS paid for my time on the boat.

6.   On the days when I worked on the boat, I estimate that I spent approximately two (2) hours a day on the maintenance of the engine, which includes the time spent filling out the checklist. However, I worked twelve-hour days on the boat, and so I spent the remaining ten (10) hours a day on the boat cooking, washing dishes, and cleaning the interior of the boat, which included the guest quarters and facilities used by the guests.[11]

In support of Guidry's statement that he loaded and unloaded the boat, plaintiff cites the deposition testimony of Gatshall and Kiechler.[12]  When asked if Guidry had to load and unload equipment from the boat, Gatshall said that Guidry had to do "rigging," which

--------

[11]Sworn Declaration of Mark Guidry ("Guidry Declaration"), Exhibit F to Plaintiff's Response, Docket Entry No. 23, pp. 1-2 ¶¶ 2-6.

[12]Plaintiff's Response, Docket Entry No. 23, p. 4.

involved hooking equipment to cranes so that the cranes could lift the equipment from the boat onto a platform.[13]  Kiechler similarly stated that Guidry's loading and unloading duties involved rigging, and that loading and unloading the boat did not take all day but could take up to five or six hours.[14]

In support of Guidry's statement that he cooked, cleaned, and did laundry for passengers, plaintiff cites excerpts from the deposition testimony of Gatshall and Kiechler.[15]  The excerpts from Kiechler's deposition on which the plaintiff relies show that the *Evelyn M* would sometimes have as many as four crew members and four Williams Co. employees as passengers, that when a cook was not on board Guidry sometimes cooked for the Williams employees, that when the Williams employees disembarked a crew member would strip their beds and launder the sheets and towels that they had used, that he had seen Guidry perform these tasks, and that Guidry had shopped for groceries used to feed Williams Co. passengers.[16]  Kiechler explained that the Williams Co. employees usually stayed on board the boat for a week, and that only when they got off the boat were

---

[13]Oral and Videotaped Deposition of Alvin Gatshall ("Gatshall Deposition"), Exhibit B to Plaintiff's Response, Docket Entry No. 23, pp. 88:2-89:2.

[14]Oral and Videotaped Deposition of Armand Kiechler ("Kiechler Deposition"), Exhibit C to Plaintiff's Response, Docket Entry No. 23, p. 48.

[15]Plaintiff's Response, Docket Entry No. 23, pp. 2-3.

[16]Kiechler Deposition, Exhibit C to Plaintiff's Response, Docket Entry No. 23, pp. 76-77.

their beds stripped and linens and towels washed.[17]  The excerpts
from Gatshall's deposition on which the plaintiff relies
corroborate Kiechler's testimony that the *Evelyn M* would sometimes
have as many as four crew members and four Williams Co. employees
as passengers,[18] that when a cook was not on board Guidry sometimes
cooked for both the Williams' employees and the crew,[19] that
passengers' bunk rooms got cleaned once a week,[20] that the Williams
employees rotated off the boat at the end the week and did not
spend weekends on the boat,[21] that when the Williams employees
rotated off the boat a crew member would strip their beds and
launder their sheets and towels, and that Guidry performed those
tasks on weeks that he worked as deckhand.[22]

In support of Guidry's statement that he spent time on land
shopping for groceries used to feed both passengers and crew
members, plaintiff cites the deposition testimony of Gatshall,
Kiechler, and Gay.[23]  Gatshall testified that Guidry would go
grocery shopping on crew change day, which for the *Evelyn M* was

------

[17]Id. at 76:13-18.

[18]Gatshall Deposition, Exhibit B to Plaintiff's Response,
Docket Entry No. 23, pp. 106:3-107:9.

[19]Id.

[20]Id. at 77:10-24.

[21]Id. at 79:7-22.

[22]Id. at 76:11-77:2, 87:20-88:1.

[23]Plaintiff's Response, Docket Entry No. 23, pp. 3-4.

Friday.[24]   Kiechler testified that cooking on board the boat was done for crew members and passengers alike, and that Guidry shopped for groceries for the Williams employee-passengers.[25] Gay testified that grocery shopping was performed on land for one to two hours.[26]

In support of Guidry's statement that he worked at the office of OOS and helped to relocate a warehouse belonging to OOS, plaintiff cites the deposition testimony of Gay and Gatshall.[27] Gatshall testified that he was aware Guidry had worked at the warehouse but said that he did not "remember what days or how many days or how long."[28]   Gay testified that Guidry spent at least a week and possibly as much as two or three weeks working in the warehouse, and acknowledged that working at the warehouse is not considered operating a vessel.[29]

Plaintiff has not cited any evidence in support of Guidry's statement that he transported crew members to and from the boat,

---

[24]Gatshall Deposition, Exhibit B to Plaintiff's Response, Docket Entry No. 23, p. 99:7-14.

[25]Kiechler Deposition, Exhibit C to Plaintiff's Response, Docket Entry No. 23, p. 77:21-24.

[26]Plaintiff's Response, Docket Entry No. 23, pp. 3-4 (citing Oral and Videotaped Deposition of Michael Gay ("Gay Deposition"), Exhibit A attached thereto, pp. 13:16-19, 14:1-4).

[27]Id. at 4.

[28]Gatshall Deposition, Exhibit B to Plaintiff's Response, Docket Entry No. 23, p. 31:19.

[29]Gay Deposition, Exhibit A to Plaintiff's Response, Docket Entry No. 23, pp. 11:20-12:14.

but has, instead, cited deposition testimony of Gatshall and
Kiechler that Guidry painted the boat while the boat was in dock.[30]
Gatshall testified that the whole crew, including Guidry, painted
the boat when it was in dock,[31] and Kiechler also said that he had
seen Guidry paint the boat.[32]

Accepting that the on-board tasks of loading and unloading the
boat,[33] cooking for passengers, cleaning bunk rooms and laundering
sheets and towels used by passengers,[34] and the land-based tasks of
shopping for groceries, working in the warehouse, and painting the
boat while it was docked are not seaman's duties, the question for
FLSA purposes is whether those nonseaman duties, viewed in the
aggregate, constitute a substantial amount of work.  See Owens, 272
F.3d at 702 n.5 and 704.  More precisely, under the regulations,
the critical inquiry is whether Guidry spent more than twenty

---

[30]Plaintiff's Response, Docket Entry No. 23, p. 4 (citing
Gatshall Deposition, Exhibit B attached thereto at 97-98, and
Kiechler Deposition, Exhibit C attached thereto at 77-78).

[31]Gatshall Deposition, Exhibit B to Plaintiff's Response,
Docket Entry No. 23, p. 97:9-15.

[32]Kiechler Deposition, Exhibit C to Plaintiff's Response,
Docket Entry No. 23, p. 78:1-4.

[33]See Owens, 272 F.3d at 704 ("Workers who are primarily
concerned with loading and unloading cargo are not, generally
speaking, seamen within the meaning of the FLSA.").

[34]See Martin, 955 F.2d at 1036 (holding that cooks on board a
ship might be exempt if they prepared meals for other crew members,
but not exempt if they prepared meals for passengers who were not
crew members, and remanding for the district court to "determine if
the cooks spend more than 20% of their time preparing food for non-
crew members").

percent of his working time engaged in nonseaman endeavors.   29 C.F.R. § 783.37.

Asserting that "[t]he unit of time to be used in determining the application of the exemption provided by section 13(b)(6) or 13(a)(14) to any employee is the workweek," 29 C.F.R. § 783.49, plaintiff argues that "[t]his means that the Defendant must prove the applicability of the exemption for each week of Mr. Guidry's tenure."[35]  Citing <u>Walling v. W.D. Haden Co.</u>, 153 F.2d 196, 199 (5th Cir.), <u>cert. denied</u>, 66 S.Ct. 1373 (1946), plaintiff argues that "where an employee performs a mixture of seaman's duties and non-seaman's duties, the courts require evidence of the percentage of the employee's work time that is devoted to the exempt and non-exempt duties."[36]  But these decisions do not support plaintiff's attempt to require a mechanistic test under which Guidry's exemption status could change from week to week depending on the particular assignments and ratios of seaman to nonseaman work performed in a given workweek.

Although plaintiff argues that in <u>Walling</u> the Fifth Circuit required evidence of the percentage of the employee's work time that was devoted to the exempt and non-exempt duties, that is not what the Fifth Circuit required; the Fifth Circuit required a determination of the dominant employment activities:

---

[35]Plaintiff's Response, Docket Entry No. 23, p. 8.

[36]<u>Id.</u> at 9.

> We lay no emphasis on the fact that these men are not
> "employed," in the sense of hired, as seamen usually are,
> by signing articles.  The question is of the work they do
> after being hired.  And it is of a mixed kind.  Some of
> it, as we have pointed out above, is of a nautical kind,
> having to do with the management of the dredge boat and
> barges as vessels; and some is the mining and handling of
> shells as an industrial operation carried on by means of
> a floating mining plant.  The dominant employment is
> clearly the industrial one, the production of shells.
> The maritime work is incidental and occasional, taking
> but a small fraction of the work time.  These employees,
> while working on a boat anchored in navigable waters and
> in admiralty jurisdiction, are principally employed not
> as seamen but as shell miners.  They are employed more in
> industry than in shipwork, and are not exempt.

Walling, 153 F.2d at 199.  The Fifth Circuit reaffirmed this

approach in Owens, 272 F.3d at 702 n.5, by stating that "[r]ather

than focus on a week by week analysis, the determining factors

should be the general nature of the work the employee most often

performs in his particular position and the primary purpose of the

position the employee occupies."  See also Godard v. Alabama Pilot,

Inc., 485 F.Supp.2d 1284, 1296 n.24 (D. Ala. 2007) (citing Owens,

272 F.3d at 702 n.5 for the observation that "[i]t would defy

orderly administration of the FLSA for plaintiff's exempt status to

vacillate from one week to the next based on the idiosyncrasies of

their particular assignments for a given week, even as their basic

assignment and position remained unchanged.").

When viewed in light of the Fifth Circuit's opinions in

Walling and Owens, the summary judgment record presents no dispute

that Guidry was subject to the FLSA's exemption for seamen because

(1) for ninety-nine percent of the time that Guidry worked for OOS,

-19-

he worked aboard the *Evelyn M* where he was subject to the authority, direction, and control of the vessel's master, i.e., the captain;[37] (2) the duties Guidry performed were predominantly seaman's duties that served "primarily as an aid in the operation of [the] vessel as a means of transportation;"[38] and (3) as a general matter Guidry did not spend a substantial portion of his time with nonseaman's work.

The court's conclusion that the duties Guidry performed were predominantly seaman's duties is based on uncontradicted evidence that Guidry spent ninety-nine percent of his time working for OOS on board the *Evelyn M*, and the duties he performed included engine room duties that were undisputedly seaman's duties, and general cleaning and maintenance duties. Asserting that Kiechler's testimony shows that Guidry's primary duty was cleaning the boat,[39] plaintiff argues that "cleaning did not . . . aid the operation of the vessel as a means of transportation; it was simply a way of making boat more presentable and comfortable."[40]  However, Kiechler did not present any evidence that the cleaning duties at issue were

---

[37]*Id.* at 2 ¶ 6.

[38]*See* 29 C.F.R. § 783.32 ("The term 'seaman' includes members of the crew such as . . . engineers . . . if, as is the usual case, their service is of the type described in § 783.31"). *See also* 29 C.F.R. § 783.35.

[39]Plaintiff's Response, Docket Entry No. 23, p. 16 (citing Kiechler Deposition, Exhibit C thereto, pp. 17, 38, and 80).

[40]*Id.*

duties intended to make the boat more presentable and comfortable for the passengers instead of keeping the boat safe and suitable for navigation. Kiechler stated that Guidry's duties included scrubbing the boat and explained that it was a white hulled boat and scrubbing the boat meant scrubbing everything above water, and that type of scrubbing could not be done in a day but, instead, had to be done in sections.[41] Kiechler described Guidry as a "deckhand" and explained that his duties entailed "[k]eeping the boat up . . . sweeping and mopping, keeping . . . the boat clean."[42] Kiechler also testified that Guidry was responsible for "general boat maintenance," and explained that meant "a little bit of everything," i.e., "painting, chipping, cleaning, . . . scrubbing."[43] Kiechler also testified that when he was not on the boat Guidry was in charge of the engine room.[44]

Plaintiff has not cited any authority in support of her contention that the general cleaning duties that Guidry performed were not seaman's duties. Moreover, courts faced with arguments that general cleaning duties are not seaman's duties have found that general cleaning duties performed on board a vessel while at sea qualify as seaman's duties because they are necessary to the

---

[41]Kiechler Deposition, Exhibit C to Plaintiff's Response, Docket Entry No. 23, p. 17:5-19.

[42]Id. at 38:1-11.

[43]Id. at 80:3-14.

[44]Id. at 38:18-23.

safe and efficient operation of the vessel as a means of transportation. See Selby v. Yacht Starship, Inc., 624 F.Supp.2d 1367, 1378 (M.D. Fla. 2008) ("the plaintiff's general cleaning duties were necessary to the safe and efficient operation of the vessel and therefore qualify as seaman's duties"); Tate v. Showboat Marina Casino Partnership, 357 F.Supp.2d 1075, 1084 (N.D. Ill. 2005) ("the cleaning and replacement of ceiling tiles are services performed to maintain the safety of the *Winstar* as a ship, and are maritime duties performed by seamen"), aff'd, 431 F.3d 580 (7th Cir. 2005); Harkins v. Riverboat Services, Inc., 385 F.3d 1099, 1104 (7th Cir. 2004) (recognizing as services that aid the operation of a vessel as a means of transportation include "keeping it afloat and clean, scraping the barnacles off its hull, keeping the engines in repair, preventing fires, etc."); Weaver v. Pittsburgh Steamship Co., 153 F.2d 597, 599, 602 (6th Cir.), cert. denied, 66 S.Ct. 1351 (1946) (plaintiff "employed as a seaman" who generally worked, ate and slept aboard ship and whose boiler-room duties included 'starting fires in the boilers, . . . repairing grates, pipes and gaskets, scraping rust, painting, cleaning . . ."); Godard, 485 F.Supp.2d at 1300 (concluding that launch operators' "janitorial . . . and cleaning functions" performed ashore in and around a pilot station had no reasonable connection to seamen's work, but stating in *dicta* that "[t]he same may not be true if they were performing such functions aboard a vessel at sea").

The court's conclusion that as a general matter Guidry did not spend a substantial portion of his time performing nonseaman's work is supported by uncontradicted evidence that Guidry worked for OOS for approximately 3 years and 3 months, i.e., from June 30, 2008, until September 13, 2011, that Guidry himself estimated that he spent ninety-nine percent of his time working for OOS on board the *Evelyn M*,[45] and that Gay's undisputed testimony that Guidry spent no more than one to three weeks of the 3 years and 3 months that he worked for OOS working in OOS's on-shore warehouse.[46] Uncontradicted evidence shows that the work plaintiff contends Guidry performed in service of passengers was work that was not performed on a daily basis but, instead, was performed once a week for short periods of time, e.g., grocery shopping performed on Fridays for one to two hours, cleaning bunk rooms once a week, and laundering passengers' sheets and towels on days that they rotated off the boat, or was work that was performed only on occasion, e.g., cooking for passengers when a cook was not on board and it was his turn to cook for everyone on board -- passengers and crew, alike.

Because the undisputed evidence is that Guidry's primary duties were general boat and engine room maintenance, and that the

---

[45]Guidry Declaration, Exhibit F to Plaintiff's Response, Docket Entry No. 23, p. 1 ¶ 2.

[46]Gay Deposition, Exhibit A to Plaintiff's Response, Docket Entry No. 23, p. 12:5-11.

duties Guidry performed in service of passengers were duties that he performed only once a week for short periods of time or only on an occasional basis, the court concludes that the summary judgment record does not raise a genuine issue of material fact as to whether Guidry was "employed as a seaman" within the meaning of 29 U.S.C. § 213(b)(6).

## IV.  Plaintiff's Objections and Motion to Strike

Plaintiff has objected and moved to strike "Paragraphs 6, 9, 10, 11, and 12 of the Affidavit of Michael Gay, on the ground that they contain statements that are not based on personal knowledge."[47] Because the court has not relied on any of the paragraphs of the Gay Affidavit to which plaintiff objects to arrive at the conclusions reached in this Memorandum Opinion and Order, plaintiff's objections and motion to strike are moot.

## V.  Conclusions

The key legal question posed by the parties is whether Guidry was subject to the seaman exemption to the overtime provisions of the FLSA.  That determination hinges on whether Guidry's basic assignment or position generally required him to spend more than twenty percent of his time performing nonseaman's work.  Because the summary judgment record does not contain evidence from which a

---

[47]Plaintiff's Objections and Motion to Strike the Affidavit of Michael Gay, Docket Entry No. 24, p. 1.

reasonable jury could conclude that Guidry generally spent more than twenty percent of his time in a workweek performing nonseaman duties, the summary judgment record fails to raise a genuine issue of material fact for trial. Thus, for the reasons explained above, Defendant Offshore Oil Services, Inc.'s Motion for Summary Judgment (Docket Entry No. 11) is **GRANTED**. Because the court has not relied on any of the paragraphs of the Affidavit of Michael Gay to which the plaintiff has objected and moved to strike, Plaintiff's Objections and Motion to Strike the Affidavit of Michael Gay (Docket Entry No. 24) is **DENIED** as **MOOT**.

      **SIGNED** at Houston, Texas, on this the 18th day of March, 2013.

                                        _____
                                              SIM LAKE
                                  UNITED STATES DISTRICT JUDGE